Thelma WALKER, Individually and as Administratrix of the Estate of Father Patrick DeSouza Walker, Deceased, Plaintiff,

v.

EASTERN AIR LINES, INC., Defendant.

90 Civ. 4826 (PKL).

United States District Court, S.D. New York.

March 9, 1992.

Fisher, Fallon, Salerno, Betlesky & Kelly (John A. Fisher, of counsel), New York City, for plaintiff.

Gallagher & Gosseen (James A. Gallagher, Jr., of counsel), Mineola, N.Y., for defendant.

### ORDER AND OPINION

LEISURE, District Judge:

This is a negligence action under New York law brought by plaintiff Thelma Walker ("plaintiff"), individually and as administratrix of the estate of her deceased husband, Father Patrick DeSouza Walker, against defendant Eastern Air Lines, Inc. ("Eastern"). Eastern previously moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the ground that the Warsaw Convention[1] precludes plaintiff's state-law negligence action. In an Order and Opinion dated September 26, 1991, this Court denied Eastern's motion for summary judgment.

---

1. The Warsaw Convention is the popularly used name for the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), note following 49 U.S.C.App. § 1502.

*Walker v. Eastern Air Lines, Inc.,* 775 F.Supp. 111 (S.D.N.Y.1991). Eastern has now moved for reargument pursuant to Civil Rule 3(j) of the Local Rules of this District or, in the alternative, for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). For the reasons stated below, Eastern's motion is denied.

*Background*

On July 14, 1988, plaintiff's husband was a ticketed passenger on Eastern's Flight No. 208 from Miami to New York. The ticket on which he was travelling provided for round trip transportation between Jamaica and New York, with an agreed stopping place in Miami. Plaintiff's husband died during the flight. Plaintiff filed a state-law negligence action against Eastern in a New York state court, alleging, *inter alia,* that Eastern had a duty not to board passengers potentially not physically able to fly and a duty to render aid, assistance, and care to ill and infirm passengers on their flights, but that Eastern failed to discharge these duties properly as to her husband. Plaintiff's complaint alleges a total of $11 million in damages. Eastern removed the action to this Court on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1441.

Plaintiff claims that her husband had a congenital asthmatic condition and that, after flying from Jamaica and having a stopover at Miami International Airport but before embarking on the Eastern flight to New York, he experienced an asthmatic attack. Plaintiff contends that Eastern was negligent in allowing her husband to board the plane and in not providing him with adequate care after boarding, and that Eastern's actions aggravated her husband's preexisting condition and contributed to his death.

Eastern denied the allegations of negligence, and subsequently moved for summary judgment pursuant to Fed.R.Civ.P. 56(c). Eastern contended that, because plaintiff's husband was travelling on a ticket that provided for round trip transportation between Jamaica and the United States, the Warsaw Convention should apply to this case. Eastern's argued that all claims against an air carrier by a passenger arising out of an international flight are governed by the Warsaw Convention; that the Convention preempts any such state law claims; that the Convention does not provide for liability of an air carrier for death or injury to a passenger not caused by an accident; and, because plaintiff's husband died of "natural" causes and not from an accident, plaintiff's action should be dismissed. In response to Eastern's summary judgment motion, plaintiff disputed the effect of the Warsaw Convention on her negligence action. Plaintiff argued that because her husband's death was not caused by an accident as contemplated by the Warsaw Convention, the Convention does not preclude her from maintaining her state-law negligence action.

*Discussion*

I. Motion for Reargument

Motions for reargument will be granted only if the Court overlooked "matters or controlling decisions" which, if considered by the Court, would have mandated a different result. *See Litton Industries Inc. v. Lehman Brothers Kuhn Loeb, Inc.,* 1989 WL 162315, at *3–4, 1989 U.S.Dist. LEXIS 9145, at *9–10 (S.D.N.Y. Aug. 4, 1989); *Moll v. U.S. Life Title Insurance Co.,* 700 F.Supp. 1284, 1286 (S.D.N.Y.1988); *Bozsi Limited Partnership v. Lynott,* 676 F.Supp. 505, 509 (S.D.N.Y.1987). "The standard for granting a motion for reargument is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court." *Ruiz v. Commissioner of Dept. of Transportation,* 687 F.Supp. 888, 890 (S.D.N.Y.1988). In its motion for reargument, Eastern asserts that the text of the Warsaw Convention, the drafting history of the Convention, and the case law interpreting the Convention all support its position. The points that Eastern now raises, however, are either repetitious of its previous arguments or new arguments that are flawed, and Eastern has failed to set forth matters or controlling decisions that the Court has overlooked that would have mandated a

different result with respect to its motion for summary judgment.

## A. *Text of the Warsaw Convention*

"When interpreting a treaty, [the Court must] begin with the text of the treaty and the context in which the written words are used." *Eastern Airlines, Inc. v. Floyd,* —— U.S. ——, 111 S.Ct. 1489, 1493, 113 L.Ed.2d 569 (1991) (quotations omitted). The American translation of Article I of the Warsaw Convention provides in part that "[t]his convention shall apply to all international transportation of persons, baggage, or goods performed by aircraft for hire." Article 17 provides that:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Article 22 places limits on air carriers' liability in the transportation of passengers and cargo, and Article 25 provides that a carrier cannot avail itself of these limitations on liability if damage is caused by "willful misconduct." Article 24 provides in part that "[i]n the cases covered by article 17," "any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention."

The text of the Warsaw Convention therefore provides that the Warsaw Convention applies to all international air flights; that air carriers are liable in the event of death or bodily injury of passengers sustained because of an accident on board the aircraft or while embarking or disembarking; that the air carrier's liability for claims arising under Article 17 is limited pursuant to the terms of Article 22; and that an action for death or bodily injury caused by an accident on an international air flight may only be brought subject to the conditions and limits set out in the Warsaw Convention. The text of the Warsaw Convention does not state that it is exclusive as to all causes of action arising out of international air flights; rather, it merely states that it is exclusive as to causes of action governed by its liability provisions.

The text of the Warsaw Convention essentially calls for a two-step inquiry in determining its effect, if any, upon a plaintiff's suit against an air carrier to recover for death or bodily injury. First, the Court must examine whether the plaintiff's claim arises out of an international air flight. If the answer to the first question is in the negative, the Warsaw Convention does not apply to the plaintiff's action at all. If, on the other hand, the answer to the first question is in the affirmative, the Court must proceed to the second question: whether the death or bodily injury for which plaintiff seeks to recover was caused by an "accident" as contemplated by the Warsaw Convention. If the answer to the second question is in the affirmative, the plaintiff's only recourse is to proceed against the air carrier under Article 17 of the Warsaw Convention; the plaintiff's potential recovery will be subject to the conditions and limitations of the Convention; and the plaintiff will be precluded from maintaining an action against the air carrier under state law. If, on the other hand, the answer to the second question is in the negative, plaintiff has no recovery under Article 17 of the Warsaw Convention, because the plaintiff is not seeking to recover for death or bodily injury caused by an accident; but, nothing in the text of the Warsaw Convention precludes the plaintiff from instituting an action against the air carrier to recover for such death or bodily injury under state law.

In the instant action, the answer to the first question is in the affirmative, because the air flight during which plaintiff's husband died was indisputably an international air flight, and the Court must proceed to the second step of the inquiry. The answer to the second question is in the negative, because plaintiff's husband's death was not caused by an accident. Plaintiff thus has no recovery under Article 17 (indeed, plaintiff has never asserted

that she is entitled to recover under the Warsaw Convention); however, the text of the Convention does not preclude her from maintaining her state-law action, and Eastern has not advanced any reasonable textual interpretation to the contrary. Therefore, the text of the Warsaw Convention by itself does not preclude plaintiff from maintaining her wrongful death action under New York law against Eastern.

### B. *Warsaw Convention Drafting History*

"[T]reaties are construed more liberally than private agreements, and to ascertain their meaning [the Court] may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Eastern Airlines, Inc. v. Floyd*, 111 S.Ct. at 1493 (quotations omitted); *but see Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 134, 109 S.Ct. 1676, 1683, 104 L.Ed.2d 113 (1989) (Court "must . . . be governed by the text [of the Warsaw Convention]—solemnly adopted by the governments of many separate nations—whatever conclusions might be drawn from the intricate drafting history that [the parties] have brought to [the Court's] attention"); *Wisconsin Public Intervenor v. Mortier*, —— U.S. ——, 111 S.Ct. 2476, 2490, 115 L.Ed.2d 532 (1991) (Scalia, J., concurring) ("we are a Government of laws not of committee reports"). Eastern argues that "it is useful to examine the drafting history of the Convention" and that such an examination supports its position. Eastern Memorandum of Law at 8. Eastern cites a number of cases that discuss the drafting history of the Warsaw Convention, and claims that these cases demonstrate that the purpose of the Warsaw Convention is to provide for uniformity in air carriers' liability with respect to claims arising out of international air flights. Eastern argues that, in order to fulfill this goal of uniformity, the Warsaw Convention should provide the exclusive basis under which a plaintiff may recover from an air carrier for all claims arising out of an international air flight; and, when the Convention does not provide for a given cause of action, such an action may

not be maintained under state law either. With respect to the instant action, Eastern asserts that, because the Warsaw Convention does not provide for an air carrier's liability for death or bodily injury occurring on an international air flight but not caused by an accident, plaintiff has no recovery under the Warsaw Convention and no recovery under state law.

A more careful reading of various cases cited by Eastern, however, reveals that these courts' interpretation of the drafting history of the Warsaw Convention is that the drafters intended to ensure uniformity in air carriers' liability for death or bodily injury in the event of accidents, rather than uniformity in air carriers' liability for death or bodily injury generally. *See, e.g., Reed v. Wiser*, 555 F.2d 1079, 1089 (2d Cir.) ("basic principle" of Warsaw Convention is that "air carriers should be protected from having to pay out more than a fixed and definite sum for passenger injuries *sustained in international air disasters*") (emphasis added), *cert. denied*, 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977); *Boehringer–Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.*, 737 F.2d 456, 458 (5th Cir.1984) ("[i]n examining the minutes and documents from the meetings resulting in the Convention, we find the delegates were concerned with creating a uniform law *to govern air crashes*") (emphasis added), *cert. denied*, 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985); *Husserl v. Swiss Air Transport Co.*, 388 F.Supp. 1238, 1244 (S.D.N.Y.1975) ("The potentially destructive liability to which a carrier might be subject *for an air disaster* was perceived as an impediment to growth. Hence, the drafters of the treaty proposed to limit liability for injuries *caused by air accidents.*") (emphasis added and citation omitted); *Velasquez v. Aerovias Nacionales de Colombia, S.A.*, 747 F.Supp. 670, 673, 675–76 (S.D.Fla.1990) ("objective [of Warsaw Convention] was to place a limitation on the potential liability of the airliners *in the event of accidents*," and action under Warsaw Convention "is exclusive *to the victims of international air disasters*") (emphasis added); *see also*

*id.* at 677 (on motion for rehearing) ("Warsaw Convention creates the exclusive cause of action *for the victims of international air disasters*") (emphasis added).

Neither the Warsaw Convention's drafting history nor the consistent interpretation of that history by courts and commentators supports Eastern's position that the drafters of the Convention were concerned with establishing uniform rules governing air carriers' liability for all deaths or bodily injuries occurring on international air flights; rather, the drafting history indicates that the Convention's goal was to provide for uniformity in air carriers' liability for deaths or bodily injuries caused by accidents, especially large-scale air disasters. "[T]he primary purpose of the contracting parties to the Convention [was to] limit[ ] the liability of air carriers in order to foster the growth of the fledgling commercial aviation industry." *Eastern Airlines, Inc. v. Floyd,* 111 S.Ct. at 1499. "[I]t was expected that [the Convention's limitation of liability], applied uniformly on international flights ... would enable airlines to attract capital that might otherwise be scared away by the fear of a single catastrophic accident." Lowenfeld & Mendelsohn, The United States and the Warsaw Convention, 80 Harv.L.Rev. 497, 499 (1967). "[C]learly the overriding purpose [of the Convention was] to limit air carriers' potential liability *in the event of accidents.*" *In re Air Disaster at Lockerbie,* 928 F.2d 1267, 1270 (2d Cir.) (emphasis added), *cert. denied,* — U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991).

### C. *Case Law*

The Supreme Court has twice expressly declined to address whether a plaintiff may institute an action under state law when the Warsaw Convention liability rules do not govern the action asserted by the plaintiff. *See Eastern Airlines, Inc. v. Floyd,* 111 S.Ct. at 1502; *Air France v. Saks,* 470 U.S. 392, 408, 105 S.Ct. 1338, 1346, 84 L.Ed.2d 289 (1985). The Third Circuit, in *Abramson v. Japan Airlines Co.,* 739 F.2d 130 (3d Cir.1984), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985), answered this question in the affirmative.

In *Abramson,* the facts of which are quite similar to the instant case, a passenger on an international flight suffered an attack from a preexisting condition, paraesophageal hiatal hernia. The passenger alleged that the negligent conduct of the carrier and its employees aggravated the preexisting condition, which worsened the effects of the attack and ultimately required surgery. The passenger sued the air carrier under both the Warsaw Convention and state law. The Third Circuit found that no accident had occurred, thereby foreclosing the possibility of the passenger's recovering against the air carrier under the Warsaw Convention, and affirmed the district court's grant of summary judgment against the passenger on the Warsaw Convention claim. The Third Circuit did, however, vacate the district court's grant of summary judgment against the passenger on the state law claim, concluding that the Warsaw Convention does not exclusively govern claims brought by passengers against air carriers arising out of international flights, and that when an action does not arise under the Warsaw Convention, state law claims may be instituted against the air carrier. Last year, the Second Circuit endorsed the reasoning and the result of the Third Circuit's *Abramson* decision, concluding that when a plaintiff's claim "does not arise under the Warsaw Convention," the plaintiff "plainly may institute" such an action against an air carrier under state law. *In re Air Disaster at Lockerbie,* 928 F.2d at 1273.

Eastern fails to acknowledge the Second Circuit's affirmation in *Lockerbie* of the *Abramson* decision; instead, it cites a long list of cases for the proposition that the Warsaw Convention precludes all state-law actions for death or bodily injury occurring on international air flights. Eastern's reliance on these cases is, however, entirely misplaced. These cases do not hold that the Warsaw Convention absolutely precludes a plaintiff from instituting an action against an air carrier under state law for death or bodily injury occurring on an international air flight. Rather, in nearly every case cited by Eastern, the plaintiff

asserted a claim under the Warsaw Convention; the court found that no accident took place, so that the air carrier could not be held liable under Article 17 of the Convention; and, accordingly, the court dismissed the plaintiff's Warsaw Convention claim. *See Padilla v. Olympic Airways*, 765 F.Supp. 835 (S.D.N.Y.1991) (plaintiff sued "solely under the terms of the Warsaw Convention and not on any common law claim"; no accident occurred; air carrier held not liable under Warsaw Convention); *Mazze v. Swiss Air Transport Co.*, 21 Av.Cas. (CCH) 17,320 (S.D.N.Y.1988) (passenger sued "under the Warsaw Convention"; no accident occurred; air carrier held not liable under Warsaw Convention); *Margrave v. British Airways*, 643 F.Supp. 510 (S.D.N.Y.1986) (plaintiff sued under Warsaw Convention; no accident occurred; air carrier held not liable under Warsaw Convention); *Salce v. Aer Lingus Air Lines*, 19 Av.Cas. (CCH) 17,377 (S.D.N.Y. 1985) ("[p]laintiffs base[d] their claim on the Warsaw Convention"; no accident occurred; air carrier held not liable under Warsaw Convention); *Warshaw v. Trans World Airlines, Inc.*, 442 F.Supp. 400 (E.D.Pa.1977) (plaintiff sued "under the provisions of the Warsaw Convention"; no accident occurred; air carrier held not liable under Warsaw Convention). In none of

these cases [2] does it appear that a court dismissed an action asserted under state law, as opposed to the Warsaw Convention, for death or bodily injury that occurred on an international air flight but was not caused by an accident.

If the interpretation of the Warsaw Convention that Eastern advances is someday to prevail, one of three things must happen: either the text of the Warsaw Convention must be amended, or the Second Circuit must alter the clear position it expressed in *Lockerbie*, or the Supreme Court must answer the question it has twice declined to answer. Until one of these three events occurs, however, this Court will follow the text of the Warsaw Convention and the Second Circuit's *Lockerbie* analysis, and will not preclude an action under state law for death or bodily injury occurring on an international air flight when the death or bodily injury was not caused by an accident. Eastern has therefore failed to set forth any matters or controlling decisions that, if considered by the Court, would have mandated a different result as to Eastern's initial motion for summary judgment. Eastern's motion for reargument pursuant to Civil Rule 3(j) of the Local Rules of this District is therefore denied.[3]

---

**2.** In *Salazar v. Mexicana Airlines*, 20 Av.Cas. (CCH) 17,114 (W.D.Tex.1986), cited by Eastern, a Mexicana Airlines passenger sued the air carrier under the Warsaw Convention for injuries sustained on an international air flight. The Court found that no accident occurred, and accordingly dismissed the passenger's Warsaw Convention suit. Although it does not appear that the passenger asserted any claims under state law, the court stated in dictum that "recovery may not be predicated upon theories of negligence otherwise available under State law." Needless to say, this Court is not bound by a casual statement, unsupported by any reasoning, made in an opinion by a district court in another circuit. This is particularly so when the statement is inconsistent with the text of the Warsaw Convention and the Second Circuit's command that a plaintiff suing an air carrier for death or bodily injury that occurred on an international air flight but was not caused by an accident "plainly may institute" such an action. *In re Air Disaster at Lockerbie*, 928 F.2d at 1273.

**3.** Eastern also argues that, if the Court permits plaintiff to maintain her state-law negligence action, Eastern's potential liability should none-

theless be subject to the liability limitations of the Warsaw Convention, as modified by the Montreal Agreement (Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, Civil Aeronautics Board Agreement 18900, note following 49 U.S.C.App. § 1502). Eastern's argument, however, has no support in the text of the Warsaw Convention. Article 24 provides that *"[i]n the cases covered by article 17,"* "any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention" (emphasis added). The Convention does not, however, provide that an action for death or bodily injury suffered on an international air flight but not caused by an accident, which is brought under state law, is subject to the Convention's liability limitations. *See also Husserl v. Swiss Air Transport Co.*, 388 F.Supp. at 1245 ("the drafters explicitly made the conditions and limits established by the Convention exclusively applicable *to certain actions* for damages *based on the enumerated types of injury* ") (emphasis added).

## II. Certification of Interlocutory Appeal

 Eastern has moved, in the alternative, for this Court to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Section 1292(b) provides in part that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

With respect to Eastern's motion, the text of the Warsaw Convention states that causes of action arising under Article 17—*i.e.*, actions against air carriers for death or bodily injury caused by an accident on an international air flight—must be brought exclusively pursuant to the terms of the Warsaw Convention, but does not preclude state-law actions for death or bodily injury *not* caused by an accident. Furthermore, the Second Circuit has stated that a plaintiff such as the plaintiff in the instant action "plainly may institute" an action under state law for death or bodily injury suffered on an international air flight, when the death or bodily injury was not caused by an accident. *In re Air Disaster at Lockerbie*, 928 F.2d at 1273. There is therefore no "substantial ground for difference of opinion" on the issue of whether plaintiff may maintain her state-law negligence action, and no reason for this Court to certify an immediate appeal. Accordingly, Eastern's motion for certification pursuant to 28 U.S.C. § 1292(b) is denied.

### *Conclusion*

For the reasons set forth above, Eastern's motion for reargument pursuant to Civil Rule 3(j) of the Local Rules of this District or, in the alternative, for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is denied in its entirety. Counsel for plaintiff and Eastern shall appear before this Court for a pre-trial status conference on Friday, April 10, 1992, at 2:00 p.m.

SO ORDERED.